IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

OLGA G. VENEGAS,

        Plaintiff,

vs.                                         No. 11-CV-0448 MV/WPL

CHRISTOPHER CARRILLO, FELICIANO
GARCIA, ANTHONY SEPULVEDA,
SEBERO TORRES, JOE TRISTE, AND
UNKNOWN SUPERVISORS,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment

[Doc. 4].  The Court, having considered the motion, briefs, the relevant law, and being otherwise

fully informed, finds that there are genuine issues of material fact regarding the circumstances

leading up to Plaintiff's arrest and the arrest itself that preclude the dismissal of Plaintiff's

Fourth Amendment and equal protection claims.  However, the Court has identified no genuine

issues of material fact with respect to Plaintiff's substantive due process claim, and Defendants

are entitled to judgment as a matter of law on that claim.  Defendants' Motion for Summary

Judgment shall therefore be **GRANTED IN PART AND DENIED IN PART** for the reasons

stated herein.

## BACKGROUND

Many of the facts in the instant case are disputed.  As the Court will further explain

below, the material nature of the disputed facts renders summary judgment inappropriate for the

majority of the claims in this case.  What follows is a brief summary of the relevant undisputed

facts.  The Court will later address those facts that are in dispute, keeping in mind that it must

accept the facts as alleged by Plaintiff, provided they have some support in the record, as is appropriate on Defendants' motion for summary judgment on the issue of qualified immunity. *See Klen v. City of Loveland, Colo.*, 661 F.3d 498, 508 (10th Cir. 2011).

Plaintiff Olga Venegas has epilepsy. On Sunday, June 9, 2007, she suffered a grand mal epileptic seizure, or tonic clonic seizure, while walking near the intersection of MacLeod and Bridger in Las Cruces. Fire and police personnel responded to a 911 call and arrived at the scene. Defendant Christopher Carrillo, an officer with the Las Cruces Police Department, arrived at 4:22 p.m. Fire and emergency medical services personnel arrived shortly thereafter. Defendant Carrillo observed Plaintiff to be lying on the sidewalk so as to block pedestrians from walking by. Defendant Carrillo could not tell whether Plaintiff was suffering from a medical or mental health condition. A bystander, Denise Power, advised Defendant Carrillo that she recognized Plaintiff as her neighbor, and believed Plaintiff had epilepsy. Ms. Power also told Defendant Carrillo that Plaintiff lived just around the corner. However, Defendant Carrillo could not go to Plaintiff's house to locate her family members or inquire about her medical condition because he was the only law enforcement officer present.

Defendant Feliciano Garcia then arrived on the scene. The officers attempted to speak with Plaintiff but she did not cooperate. They believed that Plaintiff's behavior was aggressive and inconsistent with a medical condition, and they informed her that they were going to arrest her for concealing her identity. Plaintiff still did not cooperate with the officers and they proceeded to arrest her in what Plaintiff alleges was an excessively forceful manner. During her arrest, Plaintiff kicked the officers' legs, leaving dirt marks on their uniforms. The officers continued with the arrest, and Plaintiff hit her head as they placed her in their patrol vehicle. During the course of the incident, Plaintiff sustained numerous abrasions and bruises. Due to the

fact that she was just coming out of a tonic clonic seizure, Plaintiff remembers few, if any, of the events surrounding her arrest prior to the officers placing her in their patrol vehicle.

While Defendant Carrillo was en route to the police station with Plaintiff, Detective Kacee Thatcher arrived at the intersection of McLeod and Bridger. Detective Thatcher went to Plaintiff's house, where she learned from Plaintiff's daughter that Plaintiff suffered from epilepsy. She contacted the shift sergeant and advised him of Plaintiff's condition. After Detective Thatcher arrived at the station, the officers decided that due to Plaintiff's epilepsy, they would release her without charges. She was released at 5:45 p.m. but remained at the station in order to provide a statement to Detective Thatcher. After she provided a statement, officers transported Plaintiff to the hospital at her request.

On June 18, 2007, Plaintiff suffered another tonic clonic seizure while walking near her home, and Defendants Sepulveda and Torres responded to the scene. In an order to be filed in conjunction with the instant Memorandum Opinion and Order, the Court granted Defendants' Motion to Dismiss all of Plaintiff's claims arising from the June 18, 2007 incident.

Plaintiff has filed this action under 42 U.S.C. § 1983, which provides a cause of action against state officers for depriving individuals of their rights under federal law or the United States Constitution. Defendants now move for summary judgment on qualified immunity grounds.

## APPLICABLE LAW

### I.    Summary Judgment

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The

moving party bears the initial burden of showing "an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation and marks omitted).  The burden then shifts to the non-moving party to show a genuine issue of material fact.  *Id*.  In response to a properly supported motion for summary judgment, the non-movant "may not rely merely on allegations or denials in its own pleading . . . [but rather must] set out specific facts showing a genuine issue for trial." *Id*.

In reviewing a motion for summary judgment, the Court must "examine the factual record and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1184 (10th Cir. 2010).   At this juncture, it is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings.  *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F. 3d 1045, 1050 (10th Cir. 2008).  Rather, the Court's task is to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).  Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.    Qualified Immunity

The qualified immunity doctrine shields government officials from suits for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The United States Supreme Court recently explained:

Qualified immunity gives government officials breathing room to make

4

> reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law.  Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.

*Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244-45 (Feb. 22, 2012) (citations omitted).

In contrast to a traditional summary judgment motion, in the context of qualified immunity the plaintiff bears the burden of proof.  *Camuglia v. City of Albuquerque*, 448 F. 3d 1214, 1218 (10th Cir. 2006).  To survive a motion for summary judgment where qualified immunity is at issue, Plaintiff must demonstrate on the facts alleged that: (1) Defendants' conduct violated her federal constitutional or statutory rights, and (2) the right violated was clearly established at the time of the alleged violation.  *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) (citing *Pearson*, 555 U.S. 223 (2009)).  In assessing whether the plaintiff's asserted right was clearly established, the Court looks for "Supreme Court or Tenth Circuit precedent on point or clearly established weight of authority from other courts finding the law to be as the plaintiff maintains."  *Koch v. City of Del City*, 660 F.2d 1228, 1246 (10th Cir. 2011).  However, "officials can still be on notice that their conduct violates established law even in novel factual circumstances."  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted."  *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled in part by Pearson*, 555 U.S. 223 (2009); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.").

**DISCUSSION**

When, as here, the record is rife with factual disputes, the Court must "consider whether taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer[s'] conduct violated a constitutional right." *Bradford v. Wiggins*, 516 F. 3d 1189, 1195 (10th Cir. 2008).  In the traditional summary judgment context, the Tenth Circuit has noted: "[B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record." *Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009).  Keeping these principles in mind, the Court also observes that assessing factual disputes in this case presents a particular challenge because the Magistrate Judge stayed *all* discovery, rather than permitting limited discovery as to the issue of qualified immunity.  *Cf. Crawford-El v. Britton*, 523 U.S. 574, 599-600 (1998) (advising trial judges to "manage the discovery process to facilitate prompt and efficient resolution of the lawsuit" and "give priority to discovery concerning issues that bear upon the qualified immunity defense").  Understandably so, because Plaintiff's counsel in no way responded to Defendants' motion to stay all discovery; nor did Plaintiff object to the Magistrate Judge's order.  Yet this chain of events gives the Court a difficult task in determining, on minimal evidence, whether the record provides adequate support for Plaintiff's challenged version of the facts.

I.      **Plaintiff's Fourth Amendment Claims**

Plaintiff makes the following claims under the Fourth Amendment: excessive force (count I), false arrest (count II), false imprisonment (count III), and unreasonable search and seizure (count V).  As factual support for these allegations, Plaintiff advances evidence that Defendants Carrillo and Garcia ignored a witness who told them that Plaintiff suffered from epilepsy, ignored physical signs that Plaintiff was suffering from a medical condition, and

6

proceeded to handle her in a violent and abusive manner as she was coming out of a seizure. Two witnesses, Denise and Billy Power, describe Plaintiff, a woman who measures five-foot-two and weighs between 100 and 115 pounds, as "appear[ing] to be in some kind of medical distress" when the officers approached her.  Affidavit of Power, D. at ¶ 5; Affidavit of Power, B. at ¶ 6.  These witnesses state that Plaintiff appeared confused and ill, but did not seem intoxicated.  Mr. and Mrs. Power further state that they never heard Plaintiff yell, never saw her hit or kick anyone or otherwise act aggressively, and did not see her cause any kind of disturbance.  According to Defendant Carrillo, "Billy and Denise Powers [sic] were there during the entire incident.  They reside . . . [in] the house in front of which Plaintiff was lying." Affidavit of Carrillo at ¶ 4.

### A.      Excessive Force

#### 1.      Whether Defendants Violated Plaintiff's Constitutional Rights

In evaluating Plaintiff's claim of excessive force, the Court begins with the Fourth Amendment's "objective reasonableness" standard.  *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 664 (10th Cir. 2010).  The appropriate inquiry is  "whether the officers' actions [we]re 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Graham v. Connor*, 490 U.S. 386, 397 (1989). Pursuant to *Graham*, the Court considers the following factors in determining whether the use of force is reasonable in a particular situation: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether she is actively resisting arrest or attempting to flee.  *Id*. at 396.  If the Court finds that the use of force was excessive, it must then determine whether a reasonable officer under the circumstances could have believed the level of force was appropriate.

"Summary judgment on the basis of qualified immunity is inappropriate where there is a factual dispute involving an issue on which qualified immunity turns." *Harapat v. Vigil*, 676 F. Supp. 2d 1250, 1266 (D.N.M. 2009).  The plain language of *Graham* compels the conclusion that the factual disputes in this case preclude summary judgment as to Plaintiff's excessive force claim.  The Court is unable to assess the officers' actions "in light of the facts and circumstances confronting them" because the witnesses' accounts of those circumstances differ dramatically.  If the circumstances when Defendants arrived at the scene were as Plaintiff's witnesses describe – Plaintiff lay on the ground suffering from an obvious medical condition and never yelled at anyone or otherwise acted aggressively – then the officers violated Plaintiff's clearly established rights by using a level of force that no reasonable officer under the circumstances could have thought was appropriate.

Applying the first *Graham* factor, the only crime initially at issue would have been violation of the municipal ordinance prohibiting "obstructing movement," and even this potential violation would be due to an involuntary medical condition.  Assuming the facts as Plaintiff's witnesses state them to be, the severity of the crime at issue – obstructing movement – is minimal.  Defendant Carrillo himself states: "[W]hile it is technically a crime to lie across the sidewalk and block pedestrian access, it is a minor crime for which I would not normally arrest someone."  Affidavit of Carrillo at ¶ 46.  The second *Graham* factor also points in Plaintiff's favor.  Plaintiff, a five-foot-two woman who weighed no more than 115 pounds, lay on the ground in "some kind of medical distress" and in no way acted aggressively towards the officers. Affidavit of Power, D. at ¶ 5; Affidavit of Power, B. at ¶ 6.  In contrast, the Powers describe Defendants' behavior towards Plaintiff as "very aggressive" and "violent."  Affidavit of Power, D. at ¶ 12; Affidavit of Power, B. at ¶ 14.  On these facts, there is no basis to find that Plaintiff

8

posed "an immediate threat to the safety of the officers or others."  *See Graham*, 490 U.S. at 396.

As to the third *Graham* factor, again looking at the Powers' affidavits, Defendants forced

Plaintiff onto her stomach while she was in a dazed state due to her recent seizure, wrenched her

arms behind her and physically forced her into the police car.  After they handcuffed her, she

"became assertive [and] refused to cooperate." Affidavit of Power, D. at ¶ 15; Affidavit of

Power, B. at ¶ 16.  Defendants have submitted photographs exhibiting dirt marks on their

uniforms, which they state resulted from Plaintiff kicking them, but the Powers state that they

never saw Plaintiff kick anyone.  Nevertheless, the parties appear to agree that a struggle ensued

when Defendants handcuffed Plaintiff, so there is no dispute that Plaintiff to some extent resisted

arrest.  However, she certainly did not flee, and she only resisted arrest *after* Defendants handled

her in an aggressive and violent fashion.  At this point, she was handcuffed and posed no

legitimate threat to the officers or bystanders.

### 2.      Whether the Rights at Issue Were Clearly Established

The Court concludes on Plaintiff's version of the facts that Defendants violated her right

to be free from excessive force.  With respect to the "clearly established" prong of the qualified

immunity analysis, it is generally not necessary to find a controlling decision declaring the "very

action in question . . . unlawful." *Anderson*, 483 U.S. at 640.  However, "[t]he contours of the

right must be sufficiently clear that a reasonable official would understand that what he is doing

violates that right."  *Id*. at 635.  The Tenth Circuit recently explained:

> Ordinarily, in order for the law to be clearly established, there must be a Supreme
> Court or Tenth Circuit decision on point, or the clearly established weight of
> authority from other courts must have found the law to be as the plaintiff
> maintains.  Because the existence of excessive force is a fact-specific inquiry,
> however, there will almost never be a previously published opinion involving
> exactly the same circumstances.  Thus, we have adopted a sliding scale: The more
> obviously egregious the conduct in light of prevailing constitutional principles,

>the less specificity is required from prior case law to clearly establish the
>violation.  When an officer's violation of the Fourth Amendment is particularly
>clear from *Graham* itself, we do not require a second decision with greater
>specificity to clearly establish the law.

*Morris v. Noe*, --- F.3d ----, ----, 2012 WL 604170 at *7 (10th Cir. Feb. 27, 2012) (quotations

omitted).

Not surprisingly, the Court has not found a case with identical facts to the instant case,

and accordingly will take guidance from the "sliding scale" concept as articulated in *Morris*.

Plaintiff, a petite middle-aged woman suffering from a medical condition, lay on the ground as

two male police officers forced her onto her stomach, wrenched her arms behind her back, and

physically forced her into their police car, causing her to bump her head.  The Court finds that

the *Graham* factors alone prohibit this treatment of an individual who: (1) committed no crime

aside from a municipal code violation, by involuntarily lying on the sidewalk due to a medical

condition; (2) was subdued and posed no threat to the officers or the public; and (3) did not

cooperate with the officers in light of their harsh treatment, but never made any attempt to flee.

The Court emphasizes that this conclusion is based on Plaintiff's version of the facts at issue,

facts which are so hotly disputed that summary judgment would be entirely inappropriate as to

this claim.

### B.     False Arrest, False Imprisonment, and Unreasonable Search and Seizure

False arrest and false imprisonment are state law torts.  In this action filed pursuant to

§ 1983, these claims are more appropriately labeled claims of unreasonable seizure in violation

of the Fourth Amendment.  Plaintiff's Fourth Amendment claim is based on a theory that the

officers had no probable cause to support her arrest nor her continued detention.  *See Fogarty v.

Gallegos*, 523 F.3d 1147, 1158-59 (10th Cir. 2008) ("The law [] is unambiguous: a government

official must have probable cause to arrest an individual") (quotation and alteration omitted). If a reasonable officer could have believed that probable cause existed to arrest and continue to detain Plaintiff for roughly one hour, Defendants are entitled to qualified immunity as to this claim. *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010).

"Probable cause to arrest exists where, under the totality of the circumstances, a reasonable person would believe that an offense has been committed by the person arrested." *United States v. Martin*, 613 F.3d 1295, 1302 (10th Cir. 2010) (internal quotation marks omitted). This totality-of-the-circumstances analysis presents an objective inquiry: "An arrest is not invalid under the Fourth Amendment simply because the police officer subjectively intended to base the arrest on an offense for which probable cause is lacking, so long as the circumstances, viewed objectively, justify the arrest." *Howards v. McLaughlin*, 634 F.3d 1131, 1142 (10th Cir. 2011) (internal quotation marks omitted). In other words, Defendants' arrest of Plaintiff was valid as long as probable cause existed for *some* offense.

Defendant Carrillo states at the time he and Defendant Garcia arrested Plaintiff, they had probable cause to believe she committed the following offenses: (1) battery, which occurred when she grabbed and pushed away the arm of an EMT who attempted to give her a sternum rub; (2) disorderly conduct, for Plaintiff's intermittent yelling during the incident; (3) concealing identity, for Plaintiff's failure to identify herself at the officers' request; and (4) obstructing movement – a violation of the Las Cruces Municipal Code – for lying crosswise across the sidewalk and hindering others from walking by.

As with Plaintiff's excessive force claim, the material factual disputes surrounding Plaintiff's behavior and demeanor in the period leading up to her arrest preclude summary judgment on the remaining Fourth Amendment claims. Whereas Denise and Billy Power agree

11

that she did not yell nor act aggressively, Defendant officers state that Plaintiff was yelling intermittently and was "extremely aggressive."  Affidavit of Carrillo at ¶ 29.  Both Powers state that they "never saw [Plaintiff] grab, hit, or kick anyone, or otherwise behave aggressively toward either of the police officers or anyone else on the scene."  Affidavit of Powers, D. at ¶ 7; Affidavit of Powers, B. at ¶ 11.  These statements, combined with Defendant Carrillo's statement that the Powers were present for the entire incident, create a material factual dispute. The record is therefore inadequately developed to support either side's argument as to whether or not Defendants had probable cause to arrest Plaintiff for battery or disorderly conduct.

Whether or not Defendants had probable cause to arrest Plaintiff for concealing identity or obstructing movement presents a different question.  It is undisputed that Plaintiff was lying on the sidewalk so as to block the movement of others who wished to pass by.  Moreover, the Powers do not attempt to dispute Defendant Garcia's assertion that he asked Plaintiff to identify herself and she refused; although the Powers were present for the entire incident, they do not claim to have heard every exchange between Plaintiff and Defendants.  The question is therefore whether, assuming that Plaintiff indeed refused to provide her identity and taking the Powers' version of Plaintiff's behavior and demeanor as true, Defendants had probable cause to arrest Plaintiff for either of these two offenses.

The Court again finds that the facts governing the outcome on this question are material and disputed.  As noted above, the Powers stated that Plaintiff appeared to be suffering from medical distress and was not acting in an aggressive or violent manner.  Defendant Carrillo was informed that Plaintiff had a history of seizures, and he vacillated between perceiving Plaintiff's

condition as a medical issue and a mental health issue.[1]   Notwithstanding Defendant Carrillo's

confusion as to whether Plaintiff was experiencing a medical or mental health issue, when

Defendant Garcia arrived on the scene, he proceeded to physically restrain Plaintiff.  Based on

their training and experience, the basic-level EMTs and fire personnel on the scene did not

recognize Plaintiff to be coming out of a seizure.  However, the Court has noted that no

paramedics provided affidavits, and the only fire department employee with an advanced EMT

degree states: "Although possible, I have never seen any person who is in the postictal phase of a

tonic clonic seizure behave aggressively, violently, shout or use profanity."  Affidavit of

Andersen at ¶ 18.  In other words, the affiants either: (1) dispute that Plaintiff acted aggressively

at all; (2) have basic EMT training and state that they have never heard of a person acting

aggressively when coming out of a seizure; or (3) have advanced EMT training and state that it

*is* indeed possible for someone coming out of a seizure to act aggressively.  Although Plaintiff

failed to submit an affidavit from her doctor or another medical professional who might dispute

the basic EMTs' contention that such behavior is unheard of when coming out of a seizure, the

Court nonetheless finds that Battalion Chief Andersen's admission creates a material factual

dispute.

 Plaintiff has raised a genuine factual issue as to whether or not Defendants violated her

clearly established rights.  The Court need not provide case law to support the proposition that

---

[1] Defendants highlight the fact that Defendant Carrillo himself has epilepsy to support their contention that Plaintiff's condition was not apparent.  However, it appears from Defendant Carrillo's affidavit that he has little direct experience with epileptic seizures and their after-effects, and it is unclear if he has suffered a seizure since he was five years old.  *See* Affidavit of Carrillo, ¶¶ 16-22 ("I suffered regular seizures until age 5.  At age 5 I began taking anti-seizure medication . . . .  At the age of 16, due to the fact that anti-seizure medication was effective in preventing seizures, my neurologist decided to wean me off the medication . . . .  At age 17, I stopped taking anti-seizure medication entirely.  I did not have any further seizures.").

no reasonable officer would believe probable cause exists to arrest someone who is suffering

from an obvious medical condition that caused her to fall down on the sidewalk, amounting to a

technical and involuntary violation of a city ordinance.  Likewise, if it would be apparent to a

reasonable officer that the individual in question is suffering from a medical condition that

makes her dazed and unresponsive, no probable cause exists to arrest her for concealing identity.

## II.  Plaintiff's Equal Protection Claim

Plaintiff alleges that Defendants treated her less favorably based on her disability in

violation of the Fourteenth Amendment's Equal Protection Clause.  Disabled persons are a non-

suspect class, triggering rational basis review under the Fourteenth Amendment.  *Copelin-Brown*

*v. New Mexico State Personnel Office*, 399 F.3d 1248, 1255 (10th Cir. 2005).  To prove an equal

protection violation, Plaintiff must show that Defendants' unequal treatment of her was

motivated by discriminatory intent.  *Pushkin v. Regents of Univ. of Colo.*, 658 F. 2d 1372, 1384

(10th Cir. 1981) (citing *Washington v. Davis*, 426 U.S. 229 (1976)).  Discriminatory intent

"implies more than intent as volition or intent as awareness of consequences.  It requires that the

decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of,

not merely in spite of[,]" its adverse effects upon the class of persons in question.  *SECSYS, LLC*

*v. Vigil*, 666 F. 3d 678, 685 (10th Cir. 2012) (citations and quotations omitted).

The record provides no direct support for Plaintiff's claim that Defendants considered her

disability in carrying out her arrest.  Rather, it would appear that Defendants ignored the fact that

she was having a seizure, and they treated her as if she was not suffering from a medical

condition.  However,

> [w]hen the qualified immunity inquiry turns on a subjective element , . . . the
> qualified immunity analysis is modified slightly.  The defendant must do more
> than merely raise the qualified immunity defense; he must make a prima facie

14

> showing of the objective reasonableness of the challenged conduct.  If the
> defendant makes this prima facie showing, the plaintiff must then produce
> specific evidence of the defendant's culpable state of mind to survive summary
> judgment.

*McBeth v. Himes*, 598 F.3d 708, 724-25 (10th Cir. 2010) (quotations, citations and alterations

omitted).

Defendants have put forth numerous affidavits of police and fire personnel who

consistently state that they were unaware of Plaintiff's disability.  However, Plaintiff's

witnesses, in direct conflict with Defendants' affiants, state that Plaintiff had an apparent

medical condition, and in fact they informed the Defendant officers of this fact.  In light of these

disputed material facts, the Court must conclude that Defendants are unable to satisfy the burden

of making a prima facie showing of the objective reasonableness of their conduct.  The Court

will accordingly deny summary judgment as to Plaintiff's equal protection claim.

## III.   Plaintiff's Remaining Claims

Counts I, II, II and VI of Plaintiff's complaint allege, *inter alia*, violations of substantive

due process.  Count VI also alleges a general claim for unconstitutional arbitrariness.  "The

claim that a person is entitled to substantive due process  means that state action which deprives

him of life, liberty, or property must have a rational basis – that is to say, the reason for the

deprivation may not be so inadequate that the judiciary will characterize it as arbitrary."

*Weathers v. West Yuma Cnty. Sch. Dist. R-J-1*, 530 F.2d 1335, 1340 (10th Cir. 1976) (quoting

*Jeffries v. Turkey Run Consol. Sch. Dist.*, 492 F.2d 1, 3-4 (7th Cir. 1974) (Stevens, J.)

(alterations omitted)).

"An arbitrary deprivation of a [] right may violate the substantive component of the Due

Process Clause if the arbitrariness is extreme.  The plaintiff must demonstrate a degree of

outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.  A high level of outrageousness is required."  *Klen*, 661 F.3d at 512-13 (citations and quotations omitted).  In order to satisfy this standard, Plaintiff "must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power."  *Id*. (quoting  *Camuglia*, 448 F.3d at 1222).

In alleging claims of arbitrariness and substantive due process violations, Plaintiff essentially argues that Defendants' constitutional violations were so extreme so as to rise to "outrageous" and "conscience shocking" behavior.  These claims are inextricably intertwined with Plaintiff's claims of equal protection and Fourth Amendment violations, and they cannot survive on their own should Plaintiff fail to demonstrate a separate constitutional violation.  Even if Plaintiff succeeds in demonstrating that Defendants' conduct violated her clearly established constitutional rights, she can only succeed on her arbitrariness and substantive due process claims if these violations were conscience-shocking.

Viewing the facts in the light most favorable to Plaintiff, the Court finds that she has failed to advance any evidence that Defendants violated her substantive due process right to be free from arbitrary government conduct.  The Supreme Court has explained that a substantive due process violation generally consists of "conduct intended to injure in some way unjustifiable by any government interest."  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998).  To make this showing, a plaintiff cannot simply advance "vague generalities" of the fundamental liberty interest that the defendant has allegedly violated.  *Chavez v. Martinez*, 538 U.S. 760, 776 (2003).  The facts indicate that Defendants treated Plaintiff roughly and caused her to sustain abrasions and bump her head on their police car.  Nonetheless, Plaintiff has not advanced evidence that meets the steep burden of demonstrating conscience-shocking behavior.  Accordingly, the Court

16

will grant Defendants' motion for summary judgment as to Plaintiff's claims for arbitrariness and substantive due process violations.

### CONCLUSION

For the reasons set forth above, Defendants are entitled to qualified immunity on Plaintiff's substantive due process and arbitrariness claims, but will not enjoy such immunity with respect to Plaintiff's claims under the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment.  Accordingly, Defendants' Motion for Summary Judgment [Doc. 4] shall be **GRANTED** in part and **DENIED** in part.


Dated: this 28th day of March, 2012.


_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE


*Attorney for Plaintiff:*
Paul Michael Gayle-Smith

*Attorney for Defendants:*
William R. Babington, Jr.